**NOT FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:  GLENN H. PETERS,

           Debtor.

Chapter 13
Case No.   10-37346 (RTL)

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:  JUDITH A. PETERS,

           Debtor.

Case No. 10-44383 (RTL)

- - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM OPINION**

**APPEARANCES:**

LAVERY & SIRKIS
Joan S. Lavery, Esq.
Attorney for Debtors

POWERS KIRN, LLC
William M.E. Powers, III, Esq.
Attorney for Wells Fargo Bank, N.A.

**RAYMOND T. LYONS, U.S.B.J.**

**INTRODUCTION**

The sole issue is whether the debtors' residence had a value as of the petition date, September 2, 2010, that is less than $219,227.52, the amount due on the first mortgage. If so, the Debtors' plans that propose to strip off the second mortgage lien held by Wells Fargo Bank, N.A. may be confirmed. *See McDonald v. Master Fin., Inc. (In re McDonald),* 205 F.3d 606 (3d Cir. 2000). The court holds that the value of the residence is less than the amount due on the first

mortgage so the plans may be confirmed over the objection of the second mortgagee.

## JURISDICTION

This court has jurisdiction of this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a) and the Standing Order of Reference by the United States District Court for the District of New Jersey dated July 23, 1984, referring all proceedings arising under Title 11 of the United States Code to the bankruptcy court.   This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L) dealing with confirmation of plans.

## FINDINGS OF FACT AND PROCEDURAL HISTORY

The Debtors and the secured creditor each called a real estate appraiser as an expert witness.   Both appraisers are well qualified and have extensive experience in the relevant market. Both prepared written appraisal reports after inspecting the Debtors' residence and researching market date, primarily for comparable sales.   Counsel for the Debtors and the secured creditor examined and cross examined the expert witnesses highlighting the strengths and weaknesses of their opinions and pointing out typographical or other errors in their reports.   Each of the experts critiqued the other's work indicating where they differed.   Mr. Peters submitted a declaration in which he challenged some of the information in the secured creditor's appraisal.

Debtors' expert witnesses opined that the house was worth $195,000 as of January 6, 2011. Since the market continued to deteriorate from September 2010 through January 2011, at a rate of 0.5% per month, his opinion extrapolates to a value of $198,900 as of the petition date; i.e., less than the amount of the first mortgage.   The secured creditor's expert witness places the value at $250,000 as of September 2, 2010.   Since both appraisers used the sales approach to valuation, the difference in opinion relates primarily to the selection of comparable properties and the

adjustments needed to make the comparable property more similar to the subject property.  Also, the experts differed in their opinion of the market, neighborhood, the current condition of the property, and the cost of improvements needed to make it more attractive for sale.

The property in question ("P.Q.") is a 1,554 square foot, three bedroom, modular home built in 1986 on 5.8 acres in Hardwick Township, Warren County.  It is located in the mountainous northwestern corner of New Jersey not far from the Delaware Water Gap.  The secured creditor's appraiser describes the neighborhood as suburban but the photographs reveal that this is a rural area of low density.  It appears to be surrounded by agricultural and wooded areas.  The topography is very steep, so except for the graded area immediately adjacent to the house, the property is useless.  The house has little curb appeal.  It is not visible from the road as it is surrounded by woods.  It resembles a mobile home with no shrubbery or landscaping.  The house provides basis shelter, nothing more.  The driveway is only partially paved and there is no garage.  The front stoop is disintegrating cinder block.  The unattractive walkway runs next to the foundation, not towards the street or driveway, and appears to be neither concrete nor flagstone but a rough surface.  There is a small wooden deck attached to the rear corner of the house and a dilapidated shed in the yard. An oil tank is buried in the yard, but is not used for fuel.

The house has not been updated since it was assembled in 1986.  Such carpeting, as exists, is worn and badly soiled requiring replacement.  Vinyl flooring in the kitchen and bathrooms needs replacing.  There is a chronic infestation of mice.  The ceilings are low and some of the sheet rock walls and ceilings are stained.  It has no fireplace or central air conditioning.

The basement is partially finished and shows evidence of water leakage.  Deteriorated wooden Bilco doors provide access to the outside.  There is a wood-burning stove in the basement

3

that provides the only source of central heat and the chimney venting the stove is cracked resulting in a safety hazard. The interior photos of the living area taken in winter show that the family uses electric space heaters to supplement the wood stove. Plastic sheeting is affixed to the door to keep out drafts. Secured creditor's appraisal report describes the maintenance as average to below average with the estimated costs of "minor cosmetic conditioning as less than $500". The court finds this drastically underestimates the costs to bring this property into marketable condition.

Debtors' appraiser selected three comparable properties all in the same town as the P.Q. Comparable #1 was not a closed sale, but was pending under contract with closing expected within days of the appraisal report. It is of similar size and style as the P.Q., but superior in that it is a custom-built ranch, not a modular home. The contract price on Comparable #1 was $189,000. The appraiser verified later that the closing actually occurred. After adjustments for the smaller living area and lot size, the garage and fireplace that the Debtors' house lacks, and other features, the adjusted price of Comparable #1 is $194,000. The secured creditor's appraiser questions whether Comparable #1 is appropriate because the seller was a relocation service. He feels the seller had a special motivation that a typical seller would not have. Also, there was a $3,500 error in the adjustment for gross living area. Since Comparable #1 is smaller than the P.Q., the adjustment should have been positive, not negative. After correcting the error the court concludes that Comparable # 1 is appropriate at an adjusted price of $201,000

Comparable #2 used by the Debtors' appraiser is not a sale, but a listing for sale. This also has a two-car garage and fireplace and is in superior condition. The asking price was $199,000, adjusted to $192,000. Secured creditor questions the use of a property offered for sale, but not sold or even under contract. Also, secured creditor's appraiser learned that the owner has moved

to a nursing home and his reverse mortgage lender is demanding a sale. The court finds that use of this listing is appropriate under these circumstances where both experts agree that market has been weak for some time, with few transactions and a continuing decline in value over several years. The reverse mortgage situation does not appear to have distorted the seller's attempt to obtain a fair market value for his property. However, since the listing was still in effect in January 2011, four months after the petition date some upward adjustment is required for market deterioration over that time bringing the adjusted price to approximately $195,000.

Comparable #3 used by the Debtors' appraiser was a sale of a foreclosed property. The Debtors' appraiser felt that the prevalence of distressed sales in the market warranted using this comparable. He estimated that 30% of recent sales involve defaulted mortgages, foreclosures, or short sales. The secured creditor's appraiser disagreed and felt it improper to rely upon such a distressed sale in determining market value. He estimates that only 8.5% of transactions have been impacted by the credit crisis. The court accepts that the high volume of foreclosures in the region negatively impacts the market but finds this impact reflected in the sale price and asking prices of Comparables #1 and #2. The court will disregard Comparable #3 as not reflective of fair market value because the motivation of seller and buyer are distorted.

The secured creditor's appraiser has selected comparable sales that appear to the court to be vastly superior to the Debtors' residence and, thus, not really comparable. For example, Comparable #1 is brick with a multi-peaked roof and a built-in, submerged two-car garage. It is attractively landscaped and presents as a substantial home, not a trailer. It has a new roof, central air conditioning, two fireplaces, and a walkout basement – none of which are in the Debtors' house. It also has a fourth bedroom – the Debtors have three. Comparable #1 sold for $252,500 in

5

July 2010. Secured creditor's appraiser made seven adjustments but the net only reduced the price to $240,355. The court finds that this property is superior to that of the Debtors and that the adjustments have not made it comparable for comparison purposes.

Comparable #2 in the secured creditor's analysis appears even more superior to the Debtors' home then Comparable #1. It has a paved driveway leading to a front-facing two-car garage. The shrubbery is mature and well-maintained. Both the front and rear of the house are very attractive and it has a large, flat rear yard with an impeccably groomed lawn. It has a large shed at the rear of the yard that resembles a barn. This property has the appearance of a custom-built home in a suburban development, not a rural substandard dwelling like the Debtors'. Comparable #2 sold in August 2010 for $259,900 yet the appraiser adjusted the price upward to $261,110 based primarily on smaller square footage. Again, the court finds this property not an appropriate comparison to the Debtors' home.

Secured creditors' Comparable #3 is also a much more attractive home with an updated kitchen and custom cabinets. It sits on "3 park-like acres" and has a two-car attached garage. It sold in February 2010 for $270,000 after having been listed for $297,300. The appraiser adjusted this down to $249,690; but the court finds this to be insufficient. There is a large, new industrial building on the property that the appraiser failed to mention or include his value analysis or adjustments.

The secured creditor's appraisal report characterizes the market as stable with demand and supply in balance. In his testimony the witness conceded that the market had been declining for several years. His research showed a drop in prices of 13.5% from the second quarter of 2005 to the third quarter of 2010 with another 11% drop in the fourth quarter of 2010. The Debtor's

appraiser opined that the market has been decreasing with an oversupply in relation to demand. His research indicates that values have dropped 30% from the peak several years ago. This correlates with the fact that the Debtors purchased their home in 2005 for $295,000. A 30% decline would indicate a value of $206,500 which is in line with his valuation of $195,000.

## **CONCLUSION**

The Debtors bear the burden of showing that their residence is worth less than the amount of their first mortgage. The court finds that they have done so. While the court need not find the exact value of the property, the court finds that Comparable #1 and #2 used by the Debtors' appraiser, adjusted to prices of $201,000 and $195,000 respectively, most closely resemble the Debtors' home and value. The secured creditor's appraiser selected properties that are vastly superior to the Debtors and have not been adjusted sufficiently to reflect comparable value. Therefore, the court holds that this creditor is totally unsecured and the Debtors' plans may be confirmed.

Dated: August 10, 2011                **/S/Raymond T. Lyons**
                                       United States Bankruptcy Judge